## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SINCLAIR CATTLE COMPANY, INC., : | CIVIL ACTION NO. 1:14-CV-1144 |
| : | |
| **Plaintiff** : | **(Chief Judge Conner)** |
| : | |
| **v.** : | |
| : | |
| **JEFFREY WARD and** : | |
| **REBECCA WARD,** : | |
| : | |
| **Defendants** : | |

### MEMORANDUM

Presently before the court is a motion (Doc. 10) to dismiss for improper venue
or, in the alternative, to transfer or stay filed by defendants Jeffrey G. Ward and
Rebecca L. Ward on July 3, 2014.  For the reasons that follow, the court will deny
the motion.

### I.    Factual Background and Procedural History

Plaintiff Sinclair Cattle Company, Inc. ("SCC") runs a Black Angus cattle
farming business and conducts operations in Pennsylvania, Wyoming, Virginia,
West Virginia, Montana, and Nebraska.  (Doc. 1 ¶¶ 10-11).  Its operations include
breeding cattle; purchasing and selling cattle; collection, storage, implantation, and
sale of cattle embryos; and related duties.  (Id. ¶ 12).  Defendant Jeffrey Ward
("Ward") was an employee of SCC from its establishment in 1996 until 2013 and
served as its president, treasurer, and acting chief executive officer.  (Id. ¶¶ 15, 19).
Between 1996 and 2013, Ward managed the day-to-day cattle farming operations of
SCC, which included authorizing the payment of salaries and company expenses;

overseeing the breeding, sale, and purchase of cattle; and managing SCC's Pennsylvania farm.  (Id. ¶¶ 18, 20; see also Doc. 12 at 2).  Ward's wife, Rebecca Ward ("Mrs. Ward"), also worked at SCC and performed office management duties between 1998 and 2013.  (Doc. 1 ¶ 23).  J. Duncan Smith ("Smith"), currently the sole shareholder of SCC, retained ultimate control over the finances of the company.  (Id. ¶¶ 13, 18; see also Doc. 12 at 2).

In September 2013, as a result of an investigation by a financial consultant, Smith purportedly discovered misappropriation of SCC's funds and property by the Wards and consequently terminated their employment.  (Doc. 1 ¶¶ 100-129).  SCC avers that defendants abused their control over the operations of the company for years by, inter alia, misappropriating company funds for personal use, transferring company property without full payment to SCC, obtaining fraudulent reimbursements from SCC, and causing funds due to SCC to be paid to accounts under defendants' control.  (Id. ¶¶ 26-27).

In March 2014, counsel for SCC and the Wards conferred regarding a possible financial settlement.  (Doc. 14 at 5; Doc. 12 at 4).  The Wards submitted formal settlement offers on March 20 and March 25, 2014.  (Doc. 14 at 5).[1]  On March 26, 2014, the Wards' counsel contacted SCC's counsel and inquired whether SCC had responded to the Wards' offer.  (Doc. 14-10, Ex. A-6).  SCC's counsel replied in

---

[1] The court reminds SCC's counsel that, pursuant to Federal Rule of Evidence 408, evidence of settlement offers may not be used to prove or disprove the validity of a party's claim.  (See Doc. 14 at 15-16 ("Plaintiff could reasonably interpret [an increase in the settlement offer amount] to mean that Defendants knew their guilt . . . .")).

an email that same day, stating that "[t]he client is evaluating a counterproposal, which is going to take a few days.  I will give you an update no later than Friday, and we will not be taking any legal action before getting back to you with that counterproposal."  (Id.)  Defendants did not receive a response by the stated deadline and, between May 12 and May 14, 2014, tried unsuccessfully to contact SCC's counsel.  (Doc. 14 at 5; Doc. 12 at 6).  On June 13, 2014, SCC filed the instant action, alleging, *inter alia*, breach of fiduciary duty and claims sounding in fraud. (Doc. 1).  The Wards filed a complaint in the United States District Court for the District of Wyoming on July 3, 2014.  (Doc. 12 at 6; Doc. 14 at 9).  Defendants state a number of claims arising out of the contractual and fiduciary relationships between the parties, as well as various tort claims.  (Doc. 14-22, Ex. D-1).

On July 3, 2014, defendants also filed before this court a motion to dismiss or, alternatively, a motion to transfer or stay the action.  (Doc. 10).  The Wards argue that SCC's complaint should be dismissed for improper venue.  (Id.)  They contend that, that although SCC filed its complaint in the instant action before defendants filed their related complaint in the District of Wyoming, the court should depart from the "first-filed" rule because SCC acted in bad faith by filing an anticipatory complaint in light of SCC's March 26, 2014 email indicating that it would refrain from taking legal action to a certain extent.  (Doc. 12 at 2).  Defendants argue in the alternative that the court should stay the action or transfer it to the District of Wyoming pursuant to 28 U.S.C. § 1404(a).  (Id. at 2, 10-11).  The motion has been fully briefed and is ripe for disposition.

## II.   **Legal Standard**

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss for improper venue. FED. R. CIV. P. 12(b)(3). When venue is improper, a district court must dismiss the action or, if in the interest of justice, transfer the action to a district in which it could have been brought. 28 U.S.C. § 1406(a). The party moving for dismissal based on improper venue "has the burden of proving the affirmative defense." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). When considering a motion to dismiss for improper venue, the court must generally accept as true the allegations in the pleadings and must view the facts in the light most favorable to the nonmoving party. Heft v. AAI Corp., 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002)).

Section 1404(a) of the United States Code governs the transfer of an action to a more convenient forum. 28 U.S.C. § 1404(a). A court has the discretion to transfer a civil action to another federal district court "for the convenience of parties and witnesses, in the interest of justice." Id. In evaluating a motion to transfer, the court must first determine whether the action could have been brought in the proposed transferee forum, and, if so, must balance a series of public and private interest factors weighing in favor of or against transfer. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); High River Ltd. P'ship v. Mylan Labs., Inc., 353 F. Supp. 2d 487, 492 (M.D. Pa. 2005). The court must "consider all relevant factors" to assess "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different

4

forum." <u>Jumara</u>, 55 F.3d at 879 (citation omitted).  The moving party bears the

burden of showing that "all relevant things considered, the case would be better off

transferred to another district." <u>In re</u> <u>United States</u>, 273 F.3d 380, 388 (3d Cir. 2001)

(citation omitted).

## III.   <u>Discussion</u>

### A.    **Motion to Dismiss for Improper Venue**

The Third Circuit has adopted the "first-filed" rule, which requires that "[i]n

all cases of federal concurrent jurisdiction, the court which first has possession of

the subject must decide it." <u>EEOC v. Univ. of Pa.</u>, 850 F.2d 969, 971 (3d Cir. 1988)

(alteration in original) (quoting <u>Crosley Corp. v. Hazeltine Corp.</u>, 122 F.2d 925, 929

(3d Cir. 1941)).[2]  The first-filed rule seeks to promote comity among federal courts

and encourage sound judicial administration.  <u>Synthes, Inc. v. Knapp</u>, 978 F. Supp.

2d 450, 456 (E.D. Pa. 2013); <u>see</u> <u>also</u> <u>EEOC</u>, 850 F.2d at 971 (noting that "this policy

of comity has served to counsel trial judges to exercise their discretion by enjoining

the subsequent prosecution of 'similar cases . . . in different federal district courts'"

(alteration in original) (citation omitted)).  A district court applying the first-filed

rule has the ability "to enjoin the subsequent prosecution of proceedings involving

the same parties and the same issues already before another district court."  <u>EEOC</u>,

850 F.2d at 971.

---

[2] The District of Wyoming is within the Tenth Circuit, which has held that the first-to-file rule allows the first court with jurisdiction to determine venue.  <u>Hospah Coal Co. v. Chaco Energy Co.</u>, 673 F.2d 1161, 1164 (10th Cir. 1982).  Thus, Third Circuit case law interpreting the first-filed rule controls, and the court will determine whether the first-filed rule as defined in <u>EEOC v. University of Pennsylvania</u> applies in this dispute.

However, the first-filed rule is not inflexible.  See id. at 972; Oak Assocs., Ltd. v. Palmer, No. 05-4210, 2006 WL 293385, at *3 (E.D. Pa. Feb. 7, 2006).  A court is not required to apply the rule rigidly; rather, it has the discretion to consider the specific circumstances of the case when determining whether to dismiss an action pursuant to the first-filed rule.  See Synthes, 978 F. Supp. 2d at 455.  Indeed, "[t]he letter and spirit of the first-filed rule . . . are grounded on equitable principles." EEOC, 850 F.2d at 977.  Certain exceptions, though rare, have been recognized by the Third Circuit as justifying departure from the rule.  Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson, No. 99-3508, 1999 WL 592399, at *2 (E.D. Pa. Aug. 5, 1999) ("Departures from the rule are 'rare' and the second action should proceed only in 'exceptional circumstances.'" (quoting EEOC, 850 F.2d at 979)).  These exceptions include:

> (1) the existence of rare or extraordinary circumstances; (2) the first-filer engaged in inequitable conduct; (3) he acted in bad faith; (4) he engaged in forum shopping; (5) the later-filed action has developed further than the first-filed action; and (6) the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in a less favorable forum.

Synthes, 978 F. Supp. 2d at 455.  In determining whether an exception to the first-filed rule applies, "due consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule."  Koresko v. Nationwide Life Ins. Co., 403 F. Supp. 2d 394, 400 (E.D. Pa. 2005).

As a threshold matter, the court must consider whether the Pennsylvania and Wyoming actions are sufficiently similar to permit the application of the first-filed rule.  Courts within the Third Circuit have adopted different approaches to the

similarity requirement.  Some courts have interpreted the first-filed rule narrowly and apply it only to actions in which the issues and parties are functionally identical.  See, e.g., Century Indem. Co. v. Certain Underwriters at Lloyd's, No. 09-94, 2010 WL 92531, at *3 (E.D. Pa. Jan. 11, 2010); CertainTeed Corp. v. Nichiha USA, Inc., No. 09-CV-3932-LS, 2009 WL 3540796, at *3-4 (E.D. Pa. Oct. 29, 2009); Academyone, Inc. v. Collegesource, Inc., No. 08-5707, 2009 WL 792865, at *1-3 (E.D. Pa. Mar. 23, 2009).

Others have adopted a flexible approach and focus instead of the degree to which the subject matter and parties in the two actions overlap.  See, e.g., Pittsburgh Logistics Sys., Inc. v. C.R. Eng., Inc., 669 F. Supp. 2d 613, 622 (W.D. Pa. 2009); Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009); Shire U.S., Inc. v. Johnson Matthey, Inc., 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008).  Under this approach, "[t]he applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align."  Villari Brandes & Kline, P.C., 2009 WL 1845236, at *6.  As the court in Synthes explained, many of the former cases rely on nonbinding dictum in the Third Circuit's decision in Grider v. Keystone Health Plan Central, Inc. that the first-filed rule is available only when the two actions are sufficiently duplicative such that "a determination in one action leaves little or nothing to be determined in the other."  See Synthes, 978 F. Supp. 2d at 456 (quoting Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 333 n.6 (3d Cir. 2007)).  The essential inquiry, according to Synthes, is the whether the subject matter of the two actions substantially overlaps.  Id. at 456-57; see also Shire U.S.,

Inc., 543 F. Supp. 2d at 409 ("[T]he substantive touchstone of the first-to-file inquiry is subject matter."). If application of the first-filed rule required complete identity of issues and parties, then defendants in the first-filed action may be incentivized to forum shop and commence similar but nonidentical actions in other venues. Villari Brandes & Kline, P.C., 2009 WL 1845236, at *6 (citing Advanta Corp. v. Visa U.S.A., Inc., No. 96-7940, 1997 WL 88906, at *3 (E.D. Pa. Feb. 19, 1997)). The court finds this latter authority persuasive.

In the case *sub judice*, the parties dispute whether any exceptions to the first-filed rule apply but do not appear to argue that the issues or the identities of the parties in either action precludes application of the rule. Both the Pennsylvania and Wyoming actions concern the circumstances under which the Wards were terminated from SCC and the parties' contractual and fiduciary obligations to each other. The court recognizes that SCC asserts claims sounding in fraud, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, and constructive trust in connection with the Wards' alleged misappropriation of SCC's assets (Doc. 1), while the Wards state claims for violations of state and federal securities laws, negligent misrepresentation, breach of fiduciary duty, breach of contract, and promissory estoppel in connection with Smith's alleged purchase of Ward's SCC common stock (Doc. 14-22, Ex. D-1). Notwithstanding certain distinct causes of action, both sets of claims arise from the parties' employment relationships at SCC prior to the Wards' termination. Importantly, both parties seek declaratory

judgments regarding their purported ownership interests in certain cattle.[3]  The

complaints reveal a substantial overlap between the cattle in dispute.  Indeed,

nearly all of the cattle that the Wards identify in the Wyoming complaint are

claimed by SCC in the Pennsylvania action.  (Compare Doc. 14-22, Ex. D-1 ¶¶ 141,

145, with Doc. 1-3, Ex. A).[4]  Finally, SCC's claims for misappropriation of corporate

assets, fraud, and conversion in the Pennsylvania action likely implicate the Wards'

claims for defamation in the Wyoming action, which concern SCC's and Smith's

alleged communications that the Wards engaged in fraudulent activities.  Under

these circumstances, the potential for "diametrically opposed conclusions" would

be salient if both cases proceeded in parallel.  See Pittsburgh Logistics Sys., Inc.,

669 F. Supp. 2d at 623.  The court therefore concludes that the two actions share

substantially similar subject matter and that the first-filed rule applies barring any

exceptions thereto.[5]

Defendants argue that the first-filed rule does not apply because SCC's

commencement of the instant action constitutes bad faith and inequitable conduct,

---

[3] In the Wyoming action, the Wards also bring causes of action for conversion, trespass to chattels, and wrongful taking of goods with respect to these cattle.  (Doc. 14-22, Ex. D-1 ¶¶ 291-330).

[4] In connection with their claims for securities law violations, defendants allege that SCC harmed Ward by, inter alia, unlawfully retaining cattle that the Wards own.  (Doc. 14-22, Ex. D-1 ¶¶ 185, 216, 226).

[5] The court acknowledges that whereas both SCC and Smith are named as defendants in the Wyoming action, Smith is not a plaintiff in the Pennsylvania action.  As noted supra, the first-filed rule does not require identical parties, Synthes, 978 F. Supp. 2d at 457, at least when the first-filed court has personal jurisdiction over all parties.  Smith concedes that he is subject to personal jurisdiction in Pennsylvania.  (Doc. 14 at 14 n.3).

as well as anticipatory filing.  (Doc. 12 at 2; Doc. 17 at 1-2).[6]  In support of their

position, the Wards point to SCC's counsel's Wednesday, March 26, 2014 email,

which indicated that SCC was considering a counterproposal to the Wards' March

25, 2014 settlement offer and would not take legal action before conveying its

counterproposal.  (Doc. 14-10, Ex. A-6).  This email specifically indicated that SCC's

counsel would respond to defendants' proposal by Friday, March 28, 2014.  (Id.)

Defendants claim that, because of this email, they "believed there was an

agreement between the parties to endeavor to settle the matter and not file

litigation unless and until settlement efforts proved fruitless and the parties agreed

to stop trying the resolve the dispute" and therefore refrained from filing an action

in the District of Wyoming.  (Doc. 12 at 4).  According to the affidavits provided by

Mrs. Ward and Attorney Alaina M. Stedillie, counsel to the Wards in the Wyoming

action, defendants were prepared to file suit in the District of Wyoming in March

2014.  (Doc. 11 at 1; Doc. 17-3 ¶ 3).  Although the Wards' counsel attempted to

contact SCC between May 12 and May 14, 2014 regarding the Wards' settlement

offer (Doc. 12 at 6; Doc. 14-26, Ex. D-5), the parties did not have any further bilateral

settlement discussions between SCC's March 26, 2014 email and SCC's filing of its

---

[6] The court notes that the boundaries of the various exceptions to the first-filed rule are not clearly delineated and that the presence of certain exceptions may imply the presence of others.  See Koresko, 403 F. Supp. 2d at 401 n.10 ("The lines between forum shopping, bad faith and anticipatory lawsuit are often blurred because bad faith cases typically include a race to the courthouse, and anticipatory lawsuits invariably involve a dispute over choice of forum." (citation omitted)); see also FMC Corp. v. AMVAC Chem. Corp., 379 F. Supp. 2d 733, 753 (E.D. Pa. 2005) (finding that a party's failure to inform the other party with whom it had engaged in settlement negotiations that it had filed a complaint constituted "bad faith and inequitable conduct").

complaint on June 13, 2014.  (Doc. 12 at 5-6; Doc. 14 at 5).  The Wards contend that the filing of this action constitutes a bad faith "race to the courthouse" in light of SCC's statement that it would "not be taking any legal action prior to getting back to [defendants] with that counterproposal."  (Doc. 12 at 5-6, 10).

In determining whether the bad faith exception to the first-filed rule applies, "the court looks to the actions of all relevant parties."  See Pittsburgh Logistics Sys., Inc., 669 F. Supp. 2d at 621.  Parties engaged in settlement negotiations may take actions that constitute bad faith sufficient to prevent application of the first-filed rule.  See id. at 623.  However, "[a] party by virtue of engaging in settlement discussions is not obligated to provide notice to his adversary that he has decided to sue to allow the adversary to commence suit first."  Zelenkofske, 1999 WL 592399, at *3.

Several cases in the Third Circuit have considered whether a party engaged in settlement negotiations acted in bad faith by preemptively filing suit.  See Pittsburgh Logistics Sys., Inc., 669 F. Supp. 2d at 623 (citing cases).  In these cases, one party set a deadline by which the dispute was to be resolved via negotiation before recourse to litigation, and in each case the opposing party filed suit before the expiration of the deadline.  See FMC Corp., 379 F. Supp. 2d at 735, 744-49 (holding that a party's filing of a suit the day before the expiration of a deadline set out in a cease-and-desist letter by the opposing party constituted bad faith); Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc., 350 F. Supp. 2d 620, 623-24 (E.D. Pa. 2004) (holding that the first-filed rule did not apply when a party filed suit within the one-week grace period set out in a cease-and-desist letter

11

by the opposing party); <u>One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc.</u>,
987 F. Supp. 317, 327-30 (D.N.J. 1997) (holding that although the first-filing party's
request for an extension of time to respond to a letter did not itself constitute bad
faith, its admission that it filed a complaint within the extended time in anticipation
of the opposing party's suit permitted departure from the first-filed rule).  As the
court in <u>Pittsburgh Logistics</u> explained, "[a] suit is 'anticipatory' for the purposes of
being an exception to the first-to-file rule if the plaintiff in the first-filed action filed
suit on receipt of specific, concrete indications that a suit by the defendant was
imminent."  669 F. Supp. 2d at 623 (citation omitted).

　　　In the case *sub judice*, SCC's filing of its complaint on June 13, 2014 does not
constitute bad faith or anticipatory filing.  SCC did not file suit before the expiration
of the deadline it set for refraining from litigation, as set out in its March 26, 2014
email.  In the email in question, SCC's counsel stated that SCC would not pursue
legal action prior to offering a counterproposal to defendants' settlement offer.
(Doc. 14-10, Ex. A-6).  SCC's counsel also stated, however, that the counterproposal
would "take a few days" and that counsel would "give [defendants] an update no
later than Friday, [March 28, 2014]."  (<u>Id.</u>)  It is undisputed that SCC never offered a
counterproposal and that the parties did not successfully communicate about a
possible settlement at any time between March 26, 2014 and the filing of the
complaint on June 13, 2014.  The fact that SCC did not send a counterproposal
within a few days does not mean that SCC's promise to refrain from legal action
could reasonably be interpreted to extend months beyond the imminent deadline.
Reading the email as a whole, the court concludes that SCC's promise to refrain

from legal action applied to the time frame specified by SCC's counsel for the

conveyance of a counterproposal.  SCC did not tell the Wards that it would refrain

from taking legal action indefinitely so long as it did not send a counterproposal; it

set forth a prompt deadline for that counterproposal and thus for SCC's promise to

refrain from litigation.  It would be unreasonable to interpret SCC's email as

precluding it from initiating legal action months after the parties' last settlement

discussion, especially when there was no further indication that a counterproposal

was forthcoming.[7]  The cases referenced *supra* in which the court held that a party's

filing of a suit within a designated grace period constituted bad faith and

anticipatory filing involved concrete and relatively short time periods, not a period

that one party perceived to continue indefinitely.

In determining whether a first-filing party acted in bad faith, the court "may

consider whether a filing preemptively foreclosed settlement negotiations."

Koresko, 403 F. Supp. 2d at 402.  SCC's commencement of the instant action did not

---

[7] Defendants rely on HPF, LLC v. Nu Skin Enterprises, Inc., No. 99-CV-1505, 1999 WL 782573 (E.D. Pa. Sept. 28, 1999), and One World Botanicals Ltd., 987 F. Supp. 317, in support of their argument that SCC engaged in bad faith by filing suit after indicating that it would refrain from doing so for a certain period of time. (Doc. 12 at 7-9).  In HPF, defendant's parent company sent a letter stating that it expected a response to its demands on or before March 25, 1999.  1999 WL 782573, at *1.  Rather than responding to the letter, HPF filed suit two days later.  Id.  In the instant case, by contrast, plaintiff did not file suit within "a few days" as stated in counsel's email, but instead filed suit several months later.  Moreover, the court in HPF noted that the second-filed action had developed further than the first.  Id. at *3.  One World Botanicals is likewise distinguishable because in that dispute the defendant in the second-filed action admitted that it filed a declaratory judgment action in anticipation of that action and because litigation of the first-filed action, which had been stayed, would constitute an inefficient use of judicial resources.  987 F. Supp. at 329.  In the instant matter, SCC disputes that its suit was anticipatory, and the District of Wyoming has stayed the second-filed action.

foreclose settlement negotiations, as the parties had not engaged in settlement negotiations for over two months.  Furthermore, there is no evidence that the Wards gave SCC "specific, concrete indications that a suit was imminent."  See Pittsburgh Logistics Sys., Inc., 669 F. Supp. 2d at 623.  Although defendants aver that they were prepared to file a complaint in the District of Wyoming in March 2014 (Doc. 12 at 4; Doc. 11 at 1; Doc. 17-3 ¶ 3), there is no indication that they informed SCC that any suit was imminent.  Indeed, SCC's counsel declared that defendants never communicated that they were prepared to file suit against SCC and that at no point did the parties discuss the appropriate court in which to bring an action.  (Doc. 14-4, Ex. A ¶ 4).  See Emergency Care Research Inst. v. Guidant Corp., No. 06-1898, 2006 WL 1879156, at *5 (E.D. Pa. July 5, 2006) (finding no bad faith exception to the first-filed rule when the parties had not engaged in settlement negotiations for two months and when defendants failed to notify plaintiff that a lawsuit was imminent); see also IMS Health, Inc. v. Vality Tech. Inc., 59 F. Supp. 2d 454, 464 (E.D. Pa. 1999) (noting that allowing the first-filed action to proceed would not serve as a disincentive to settlement when several months passed since the last active settlement negotiations).  Without sufficient information that defendants

14

were prepared to file suit, SCC's filing could not have been anticipatory.[8]

Additionally, courts often look to the status of the second-filed action to determine whether departure from the first-filed rule would better satisfy the rule's equitable goals. When the second-filed action in another jurisdiction has developed further than the first, a court has the discretion to reject the rule and permit the second-filed action to move forward. EEOC, 850 F.2d at 976. The action filed by defendants in the District of Wyoming has been stayed pending the resolution of the first-filed issue by this court. Ward v. Smith, No. 1:14-cv-0133-ABJ (D. Wyo. Sept. 22, 2014), ECF No. 26. The Wyoming action has not developed to the point that it would be equitable to depart from the first-filed rule. Accordingly, the court concludes that the first-filed rule applies to the instant action and will decline to dismiss or transfer this action for improper venue.[9]

---

[8] Indeed, counsel for SCC noted that he sent a letter to defendants' counsel on March 13, 3014, which included a settlement proposal and stated that "[w]e will be taking legal action by Wednesday of next week unless we have this resolved by then, or there is at least the prospect of resolution by then." (Doc. 14-4, Ex. A ¶ 5). Defendants' counsel did not provide a similarly definite statement of intent to file suit. A spreadsheet constructed for settlement purposes identifying amounts that SCC purportedly owed to Ward (see Doc. 17-1 ¶¶ 4-5) does not, standing alone, provide adequate notice of intent to file suit. The potential for litigation necessarily accompanies settlement negotiations; however, that mere potential was not sufficiently concrete to render SCC's suit anticipatory.

[9] Defendants also move, in the alternative, to stay the instant action pending resolution of the Wyoming action. The court may stay an action to "eliminate duplicative litigation . . . and . . . avoid an outcome in which two actions are proceeding in parallel in different district courts." FMC Corp., 379 F. Supp. 2d at 750. The District of Wyoming has stayed the second-filed action pending resolution of the venue issue in this matter; hence, this court must resolve the application of the first-filed rule.

**B.      Motion to Transfer under 28 U.S.C. § 1404(a)**

A district court may transfer an action to another district for the convenience of the parties and witnesses and in the interest of justice.  28 U.S.C. § 1404(a).  As an initial matter, the court must determine whether the action could have been brought in the proposed transferee forum.  Jumara, 55 F.3d at 879; High River Ltd. P'ship, 353 F. Supp. 2d at 492.  Venue is proper in "a judicial district in which any defendant resides" if all defendants reside in the same state, or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b).  SCC argues that the instant action should not be transferred to the District of Wyoming because venue does not lie in Wyoming.  (Doc. 14 at 18-20).  The Wards contend that venue lies in Wyoming and request an evidentiary hearing should the court reach the issue of venue.  (Doc. 17 at 10 & n.8, 13).  Assuming *arguendo* that venue is proper in the District of Wyoming, the court will proceed to weigh the private and public interests to determine whether transfer is appropriate under 28 U.S.C. § 1404(a).  Jumara, 55 F.3d at 879 (citation omitted).

**1.      *Private Interest Factors***

The court first considers (1) the plaintiff's choice of forum; (2) the defendants' forum preference; (3) where the claims arose; (4) the convenience of the parties as indicated by their physical and financial condition; (5) the convenience of the witnesses (to the extent that they may be unavailable for trial in one of the fora); and (6) the location of books and records.  Id.  Defendants advance several arguments regarding these private interest factors.  First, the Wards argue that

SCC's choice of forum is entitled to no deference because Pennsylvania is not its home forum and because SCC engaged in bad faith during settlement negotiations. (Doc. 12 at 11). SCC is a Maryland corporation (Doc. 1 ¶ 1), although the parties appear to dispute whether its principal place of business is in Maryland or Wyoming (see Doc. 1 ¶ 1; Doc. 12 at 11). As a general matter, "a plaintiff's choice of forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." Advanced Fluid Sys., Inc. v. Huber, No. 1:13-CV-3087, 2014 WL 1808652, at *17 (M.D. Pa. May 7, 2014) (quoting Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)). However, "a plaintiff's choice of forum is given less deference where the plaintiff chooses a forum outside of its state of residence." Wellpet, LLC v. Midwestern Pet Foods. Inc., No. 1:09-CV-1556, 2009 WL 5111790, at *2 (M.D. Pa. Dec. 16, 2009). A plaintiff's choice of forum is also entitled to "less deference when none of the conduct complained of occurred in plaintiff's selected forum." Lomanno v. Black, 285 F. Supp. 2d 637, 644 (E.D. Pa. 2003) (citation omitted). Defendants correctly note that Pennsylvania is not SCC's home forum. However, this fact does not require the court to give SCC's choice no deference, merely less than if it were SCC's home forum. As discussed *infra*, much of the conduct at the root of this action occurred in Pennsylvania, where SCC alleges that it owned and operated a farm. Thus, the court will accord some, albeit limited, deference to SCC's choice of forum.

As to the location of the events giving rise to the claim, the Wards concede that "some of the activity giving rise to this action occurred in Pennsylvania." (Doc. 12 at 11). In their District of Wyoming complaint, the Wards allege that relevant

event occurred in Pennsylvania, Wyoming, Virginia, and West Virginia. (Doc. 14-22, Ex. D-1). It is clear that a substantial portion of the events underlying both parties' claims occurred in Pennsylvania. Until 2013, the Wards lived in Warfordsburg, Pennsylvania and worked at SCC's Pennsylvania farm. (Doc. 1 ¶ 25). SCC alleges that defendants' alleged misappropriation of funds and fraudulent activities occurred while they lived and worked in Pennsylvania.[10] Additionally, many of the Wards' claims in the Wyoming action appear to be controlled by Pennsylvania law because the relevant events occurred in Pennsylvania. (Doc. 14-22, Ex. D-1 ¶¶ 190, 234, 249, 292, 307).

The Wards also argue that many witnesses are located in Wyoming or Montana, making Wyoming a more convenient forum. Convenience of the witnesses is a significant consideration in determining whether transfer is appropriate. Sandvik AB v. Rockmore Int'l, Inc., No. 4:05CV575, 2005 WL 3159282, at *5 (M.D. Pa. Nov. 28, 2005) (noting that "several courts have determined that the convenience of the witnesses is a primary . . . factor"). Additionally, the moving party "has the responsibility to specify clearly the key witnesses to be called." Szabo v. CSX Transp., Inc., No. 05-4390, 2006 WL 263625, at *2 (E.D. Pa. Feb. 1, 2006) (quoting Coble v. Consol. Rail Corp., No. 92-2386, 1992 WL 210325, at *2 (E.D. Pa. Aug. 26, 1992)). In arguing that the convenience of the witnesses favors transfer to Wyoming, the Wards name only one Wyoming witness in their briefs—Jolene

---

[10] The Wards contend that SCC took certain cattle belonging to the Wards from Pennsylvania to Wyoming. (Doc. 12 at 11; Doc. 17 at 10-12). That certain cattle at issue in this dispute may now be in Wyoming does not tip this factor in favor of transfer.

Baker ("Baker"), who apparently manages SCC's herd in Wyoming. (Doc. 17 at 11). In its opposition brief, SCC identifies several potential witnesses who are located in Pennsylvania or Maryland. (Doc. 14 at 8). The Wards' conclusory claim that Wyoming would be more convenient for "[m]any of the witnesses" (Doc. 12 at 11) is too vague to satisfy their burden of proof. Moreover, the limited record suggests that, of the known potential witnesses, the majority reside in or near Pennsylvania. (See Doc. 14-13, Ex. B).[11]

Finally, the Wards argue that many of the relevant records are located in Wyoming. (Doc. 12 at 12). They do not, however, point to any concrete information about the location of specific records. SCC counters that its "corporate and operational records" are closer to Pennsylvania and notes that the custodians for the Wards' banking records are located in Pennsylvania. (Doc. 14 at 8, 20; Doc 14-19, Ex. B-6). Although the Wards aver that SCC recently moved its principal

---

[11] The Wards request that the court hold an evidentiary hearing and compel the attendance and testimony of declarants Greg Golden ("Golden") and Baker, or, in the alternative, grant the Wards leave to depose Golden and Baker limited to the scope of their declarations. (Doc. 17 at 10 n.8). The court does not believe that the probative value of the declarants' potential testimony is sufficient to grant the request. The declarations of Golden and Baker purport to describe the cattle currently located at the SCC's Pennsylvania and Wyoming farms, respectively. (Doc. 14-20, Ex. C; Doc. 14-31, Ex. E). Although the location of certain cattle is unclear from the limited record, further information about the location of the cattle at issue will not alter the outcome of the Jumara analysis.

place of business to Wyoming, they have not demonstrated that the location of relevant records counsels in favor of transfer to Wyoming.[12]

### 2.   *Public Interest Factors*

The court must then balance the foregoing private interest factors against (1) the enforceability of the judgment; (2) practical considerations regarding trial; (3) relative administrative difficulty in the two fora due to court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the two fora; and (6) the court's familiarity with the applicable state law in diversity cases. Jumara, 55 F.3d at 879-80.  Some of these public interest factors may "play no role" in the § 1404(a) balancing analysis.  Lomanno, 285 F. Supp. 2d at 647.

The Wards argue that the presence of SCC's assets in "the West" would allow a Wyoming court to better enforce a judgment.  (Doc. 12 at 12).  However, the Wards do not clarify which relevant assets are located in or near Wyoming.  Conversely, defendants' assets in the event of an adverse judgment are presumably located in Pennsylvania or Florida, rather than in Wyoming.  Although the enforceability of the judgment is a significant consideration, the presence of a party's assets in a different jurisdiction does not preclude a court sitting in diversity from making a judgment enforceable in another state.

The Wards also argue that the caseload in the District of Wyoming is significantly lighter than the caseload in the Middle District of Pennsylvania.  (Id.

---

[12] The Wards have also failed to show that litigating this dispute in Wyoming would be more convenient to them than litigating this dispute in Pennsylvania from a financial or physical perspective.  SCC alleges that the Wards presently reside in Florida.  (Doc. 1 ¶¶ 2-3).

("[T]he Middle District of Pennsylvania is ten times as busy as its sister district in Wyoming." (emphasis omitted))).  Although not dispositive to the transfer analysis, the relative congestion of the courts favors transfer to facilitate the efficient resolution of the action.

Another factor to be considered is the local interest in deciding local controversies at home.  A substantial portion of the events underlying the claims occurred in Pennsylvania, as the defendants worked at SCC's Pennsylvania farm for over fifteen years.  Pennsylvania has an interest in resolving business disputes between parties with longstanding presences in the state.  Finally, Pennsylvania law appears to apply to a majority of the claims asserted in both actions.  The court's familiarity with Pennsylvania law favors retaining the action in Pennsylvania.

After balancing the relevant public and private interest factors, the court concludes that transfer to the District of Wyoming is not appropriate "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The bulk of the factors do not favor transfer, and the Wards have not met their burden of showing that "the case would be better off transferred" to the District of Wyoming.  See In re United States, 273 F.3d at 388.

**IV.**    <u>**Conclusion**</u>

For the above-stated reasons, the court will deny defendants' motion to

dismiss for improper venue or, in the alternative, to transfer or stay the action.[13]  An

appropriate order will issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Judge
Middle District of Pennsylvania


Dated:        January 21, 2015

---

[13] Presumably, the stay in the Wyoming action will remain in effect pending
further action by the District of Wyoming.