**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SINCLAIR CATTLE COMPANY INC.,** | : | **Civil No. 1:14-CV-1144** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JEFFREY WARD and REBECCA WARD,** | : | |
| | : | |
| **Defendants and Third Party Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **J. DUNCAN SMITH,** | : | |
| | : | |
| **Third Party Defendant** | : | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.     <u>Factual Background</u>**

This case, which comes before us for the resolution of a discovery dispute, represents the acrimonious dissolution of a longstanding business relationship. The plaintiff, Sinclair Cattle Company, is in the business of raising purebred Black Angus cattle. The Third Party Defendant, J. Duncan Smith, is the sole shareholder of Sinclair. The Defendant/Third Party Plaintiffs, Jeffrey and Rebecca Ward, were

formerly employed as the Chief Executive Officer and an officer manager at Sinclair Cattle Company.

On June 13, 2014, Sinclair Cattle Company sued the Wards alleging various claims of breach of fiduciary duty, conversion of corporate assets, fraud, unjust enrichment, and misrepresentation by these Defendants. (Doc. 1.) The Wards responded by filing an answer and counterclaim against Sinclair and Smith. (Doc. 39.) In this counterclaim the Wards denied the claims made against them, and leveled their own claims of breach of fiduciary duty, breach of contract, conversion, and infliction of emotional distress against Sinclair and its owner, Smith. (Id.)

It is against the backdrop of this mutual commercial acrimony that we are called upon to consider a motion to quash or modify subpoenas filed by Sinclair and Smith. (Doc. 56.) In this motion, Sinclair and Smith allege that the Wards have issued subpoenas to six third parties. (Id.) The subpoenas sought two essential categories of information: (1) tax return information relating to Smith and Sinclair; and (2) data retained in computers previously used by the Wards when they worked at Sinclair, but retained by Smith and Sinclair after the sudden dissolution of this business relationship. Smith and Sinclair have moved to quash these subpoenas, arguing that there were procedural defects in the notice of these subpoenas and that the subpoenas seek information which is not properly discoverable.

This motion is fully briefed by the parties, and is, therefore, ripe for resolution. While we agree that there were some flaws in the notice provided regarding these subpoenas, those shortcomings appear to have been inadvertent and have been largely cured. Therefore, discerning no prejudice flowing from these procedural matters, we will consider this motion to quash on its merits. Viewed in this light, we conclude that the motion to quash should be granted, in part, and denied, in part. Specifically, we find that the Wards have not made a showing sufficient to subpoena tax records from third parties at this time, but we conclude that the parties should make arrangements to provide Sinclair, Smith, and the Wards with mutual, transparent access to the data stored on the Wards' computers while they were employed by Smith and Sinclair.

## II.   **Discussion**

### A.   **Discovery Standard of Review**

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, "[r]ule 45 of the Federal Rules of Civil Procedure establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed.R.Civ.P. 45. A subpoena under Rule 45 'must fall within the scope of proper discovery under Fed.R.Civ.P. 26(b)(1).' OMS Invs., Inc. v. Lebanon Seaboard Corp., No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)."

First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013).  Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands.  In this regard, it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion.  R.J. Reynolds Tobacco v. Philip Morris Inc, 29 F. App'x 880, 881 (3d Cir. 2002).  This far-reaching discretion extends to decisions regarding how to enforce compliance with subpoenas, where " '[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court.' Guinan v. A.I. duPont Hosp. for Children, No. 08–228, 2008 WL 938874, at *1 (E.D.Pa. Apr.7, 2008) (quoting Marroquin–Manriquez v. INS, 699 F.2d 129, 134 (3d Cir.1983))." Coleman-Hill v. Governor Mifflin School Dist,. 271 F.R.D. 549, 552 (E.D.Pa. 2010).

This broad discretion, however, is guided by certain general principles.  At the outset, when considering a motion to quash or modify a subpoena we are enjoined to keep in mind that the reach of a subpoena is defined by the proper scope of discovery in civil litigation.  As one court aptly observed:

> Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure authorizes a court to quash or modify a subpoena that subjects a person to undue burden.  Fed.R.Civ.P.  45(c)(3)(A)(iv),  28  U.S.C.  (1994);  see

4

> Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley
> Roofing Enter., 160 F.R.D. 70, 72 (E.D.Pa.1995)(Joyner, J.)(stating
> same).  Accordingly, a court may quash or modify a subpoena if it finds
> that the movant has met the heavy burden of establishing that
> compliance with the subpoena would be "unreasonable and oppressive."
> Id. (citing Heat & Control, Inc. v. Hester Indus., 785 F.2d 1017, 1023
> (Fed.Cir.1986)).  [However, when assessing a motion to quash we must
> also consider the fact that] Rule 26(b)(1) provides that discovery need
> not be confined to matters of admissible evidence but may encompass
> that which "appears reasonably calculated to lead to the discovery of
> admissible evidence."   Fed.R.Civ.P. 26(b)(1).   Relevancy is to be
> broadly construed for discovery purposes and is not limited to the
> precise issues set out in the pleadings or to the merits of the case.
> Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351,(1978).  Rather,
> discovery requests may be deemed relevant if there is any possibility
> that the information may be relevant to the general subject matter of the
> action.

Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D.Pa. Dec. 4, 1998).  Thus, in ruling upon a motion to quash, "this court is required to apply the balancing standards-relevance, need, confidentiality and harm.  And even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit."   Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002).  Further, motions to quash must be viewed in light of the broad ambit of Rule 26's definition of what constitutes relevant evidence.

With these legal guideposts in mind, we turn to consideration of these third party subpoenas.

## B.   The Subpoenas for Tax Return Information Will Be Quashed

At the outset, we note that a number of these subpoenas issued by the Wards sought tax return information of Sinclair and Smith.   The legal standards which govern disclosure of tax return information impose a twofold obligation on moving parties.   Thus, the question of " '[w]hether tax returns are discoverable turns on whether (1) the tax returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.'  (Doc. No. 86 at 6 (quoting Jackson v. Unisys, Inc., No. 08–3298, 2010 WL 10018, at *2 (E.D.Pa. Jan.4, 2010)).)"   Delhagen v. McDowell, No. 3:08 CV 00285, 2010 WL 5230910, at *2 (M.D. Pa. Dec. 16, 2010).

In this case, in support of these subpoenas, the Wards have made the following proffer of relevance:

> Since the beginning of this lawsuit, the Wards have asserted that Mr. Smith misappropriated Sinclair Cattle funds for his own personal use. That is, that Mr. Smith took money from Sinclair Cattle to improve other businesses and to make purchases unrelated to Sinclair Cattle.  Mr. Smith's tax returns are relevant to show any claimed depreciation, income, or other tax deductions that Mr. Smith may have received or

claimed from Sinclair Cattle.  In other words, the tax returns are relevant to show any manner in which Mr. Smith used Sinclair Cattle for his own financial benefit.  The subpoenas to the Cavanaugh Group and GMA therefore requested Mr. Smith's personal tax returns.

(Doc. 62, p.7.)

Sinclair and Smith, in return, have asserted that their underlying financial records, which are available to the Wards, would provide the best and clearest evidence relating to business dealings between Smith and Sinclair.  Noting that the Wards must show that "there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable", <u>Delhagen v. McDowell</u>, No. 3:08-CV-00285, 2010 WL 5230910, at *2 (M.D. Pa. Dec. 16, 2010), Smith and Sinclair argue that this burden has not yet been met by the Wards.

We agree.  At the outset, while the Wards may have made a showing of some arguable relevance here, it also seems clear that the information they claim to seek relating to corporate malfeasance will not most likely be found set forth in these income tax returns.  Rather, if it exists, that information most likely resides within the banking and financial records of Smith and Sinclair, records that are available through discovery.  Therefore, the showing of relevance made here is marginal and the Wards have not satisfactorily explained why "there is a compelling need for the returns because the information contained therein is not otherwise readily

obtainable", <u>Delhagen v. McDowell,</u> No. 3:08-CV-00285, 2010 WL 5230910, at *2 (M.D. Pa. Dec. 16, 2010).   In the absence of such an explanation "the balancing standards-relevance, need, confidentiality and harm," <u>Mannington Mills, Inc. v. Armstrong World Indus., Inc.</u>, 206 F.R.D. 525, 529 (D. Del. 2002), weighs against production of this information through third party subpoenas and the subpoenas for these tax records will be quashed.[1]

### C.   The Parties Shall Provide Mutual, Transparent Access to the Data Contained in the Wards' Former Business Computers

The second broad category of data which is sought through these subpoenas relates to data that resides on the former work computers of Jeffrey and Rebecca Ward.  When this business relationship dissolved amid mutual recriminations, Smith and Sinclair retained these computers.  The Wards have issued a subpoena seeking access to the data on the computers, and Smith and Sinclair have resisted this subpoena.

---

[1] Of course should straightforward discovery of business, banking and accounting records of Smith and Sinclair allow for a more carefully tailored proffer of relevance, the Wards may renew this request in the future.  At present, however, the request does not meet  twofold obligation of showing that " (1) the tax returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." <u>Delhagen v. McDowell</u>, No. 3:08-CV-00285, 2010 WL 5230910, at *2 (M.D. Pa. Dec. 16, 2010).

In workplace disputes, the contents of an employee's computer can often have relevance both to claims and counter-claims made by the employee and his former employer.  See e.g., Helget v. City of Hays, Kans., 300 F.R.D. 496 (D. Kan. 2014); Nucor Corp. v. Bell, 251 F.R.D. 191 (D.S.C. 2008); Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614 (D. Colo. 2007).  Because this material often has potential relevance to all parties, the parties to litigation typically have a mutual obligation to preserve and provide this information to one another.  Indeed, given the ubiquitous nature of computers as a means of storing and communicating information, it would be fundamentally unfair for one party to unilaterally maintain exclusive access to this information to the detriment of the opposing party.  Denial of access to this data may work a particular hardship upon the Wards, who may need access to this data both the bolster their counterclaims and to respond to Sinclair's claims of corporate malfeasance.

Because we view this data as having potential relevance for all parties, and find that it would be inappropriate to allow only asymmetrical access to this data, we will deny the motion to quash the subpoena for this data.  We appreciate, however, a need for proper safeguards regarding the use of this shared data in a case marked by mutual corporate distrust.  Therefore, we will instruct the parties to meet, confer, and develop and mutually agreeable protocol for providing mutual transparency to this data, while

ensuring in a case marked by allegations of mutual misuse of corporate data that neither party uses the data for any purpose beyond preparation of this case.

### III.   Order

Accordingly, this 20th day of October 2015, it is ORDERED that Sinclair and Smith's motion to quash, (Doc. 55.), is GRANTED, in part, and DENIED, in part, as follows:

First, the third party subpoenas for tax records of Smith and Sinclair are QUASHED.

Second, the motion to quash the subpoena access to data stored on the Wards' workplace computers is DENIED and the parties are instructed to meet, confer, and develop and mutually agreeable protocol for providing mutual transparency to this data, while ensuring in a case marked by allegations of mutual misuse of corporate data that neither party uses the data for any purpose beyond preparation of this case. If the parties are unable to fashion such a protocol within 21 days they shall notify the Court.

*S/Martin C. Carlson*
United States Magistrate Judge